## People, ex rel. Charles B. Ball, v. Perry L. Hedrick.

### Gen. No. 13,134.

1. QUO WARRANTO—*character of office which may be made subject-matter of proceeding by.* An office within the meaning of section 1 of the Quo Warranto Act is an office which has been created either directly by legislative enactment or by ordinance passed in pursuance of power delegated by the legislature.

People ˙ v. Hedrick.

2. QUO WARRANTO—*what not office within meaning of act.* The position or post of chief sanitary inspector is not such an office as is contemplated by section 1 of the Quo Warranto Act.

*Quo warranto* proceeding. Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 4, 1907.

BENTLEY & BURLING, for appellant; CYRUS BENTLEY and ALBERT M. KALES, of counsel.

No appearance for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This cause was before the Supreme Court on appeal from the Circuit Court. Hedrick v. The People, 221 Ill. 374. In that case the respondent, Hedrick, pleaded to the information, and the relator filed a demurrer to the plea, when the respondent moved the court to carry the demurrer back to the information and sustain it to the information and dismiss the information, which the trial court refused to do, and sustained the demurrer to the plea. The respondent elected to stand by his motion to carry the demurrer back to the information. The court, in the conclusion of its opinion, say: "As the information did not, in either count thereof, distinctly aver the legal existence of the office of chief sanitary inspector, the demurrer to the plea should have been carried back to the declaration and sustained, and the petition for a writ of *quo warranto* dismissed," and the judgment appealed from was reversed and the cause remanded to the Circuit Court, with directions to sustain the demurrer to the information. Upon the cause being redocketed in the Circuit Court, an amended information was filed in the cause, to which the respondent filed an amended plea; the relator demurred to the plea, and the court, on motion of the respondent, carried the demurrer back to the information and sustained it to the information, when the relator

having elected to stand by the information the court rendered judgment that the information be quashed and dismissed. From this judgment the relator appealed. The Supreme Court, in the case cited *supra,* states, substantially, in its opinion, the averments of the original information, which need not be repeated here. It is sufficient to say that, in the original information the relator claimed to have been legally appointed and to be entitled to what is called in the information "the office of chief sanitary inspector," and averred that the respondent had usurped and unlawfully held said alleged office.

Counsel for the relator claim that there are differences between the original information, which is not in the transcript of the record, and the amended information, which, considered in connection with section 808 of the city ordinance, obviate certain criticisms of the court in Hedrick v. The People, *supra,* and bring the case within the law as announced in Ptacek v. The People, 194 Ill. 125.

Section 808 is as follows:

"808. ASSISTANTS AND EMPLOYES. Said commissioner shall appoint, with the consent of the mayor, an assistant commissioner of health, a secretary, a register of vital statistics, medical sanitary inspectors, meat inspectors, sanitary policemen and sanitary policewomen, having full police powers, and such other employes as may be necessary, who shall perform all the duties now provided by the laws of the State and ordinances of the city, and such other duties as the said commissioner of health may require and determine. He shall also have power to remove any of said officers, clerks or employes."

The first count of the amended information contains these averments:

"That pursuant to said section 808 of the ordinances above set out, the Commissioner of Health heretofore from time to time appointed, with the consent of the

Mayor and under and by virtue of the authority given by ,said section 808, Medical Sanitary Inspectors, and thereupon from time to time designated one of said Medical Sanitary Inspectors so appointed as aforesaid, as 'Chief Sanitary Inspector,' and such Medical Sanitary Inspector so designated was thereafter called 'Chief Sanitary Inspector,' and is so designated in the records of the Department of Health and of the city of Chicago, and the place or office held by such Medical Sanitary Inspector was thereafter known as the office of 'Chief Sanitary Inspector,' and is so designated in the records of the Department of Health and of the City of Chicago; that the place or office so designated and known as aforesaid as the office of 'Chief Sanitary Inspector' is, and always has been in fact, the same as the place or office of a Medical Sanitary Inspector appointed by the Commissioner of Health, with the consent of the Mayor, under and by virtue of said section 808 of said ordinances, and is and always has been held by one of said Medical Sanitary Inspectors, to-wit: that one designated by said Commissioner of Health as 'Chief Sanitary Inspector;' that said place or office of Chief Sanitary Inspector so called as aforesaid, exists and was created under and by virtue of said section 808 of the said ordinances, as aforesaid, and existed prior to and at the time of the adoption and going into effect of the Civil Service Act of the city of Chicago as hereinafter alleged, and is the same office to which the relator, Charles B. Ball, was appointed and which said Ball held and occupied until unlawfully ousted therefrom by the defendant Hedrick, as hereinbefore alleged.''

In the second count it is averred, in substance, that the commissioner of health, by virtue of the authority given him by said section 808, ''to appoint such other employes as may be necessary,'' appointed, with the consent of the mayor, an employe whom he designated as chief sanitary inspector, who was thereafter called chief sanitary inspector, etc.

The question presented for decision is, whether the amended information is sufficient, in law, assuming that all material facts averred and well pleaded are true. It is admitted by counsel for the relator, in argument, that *quo warranto* will not lie unless the chief sanitary inspectorship is an office, within the meaning of section 1 of the *quo warranto* act. This is manifestly true. Hurd's Rev. Stats. 1905, p. 1549. If it is an office, it must have been created either directly by legislative enactment, or by ordinance passed by the city council of the city of Chicago, in the exercise of power delegated to the city by the legislature. We know of no act of the legislature creating such an office as chief sanitary inspectorship, nor do the learned counsel for the relator claim that there is any such law. If there were, our attention would, assumedly, have been called to it. Has the office of chief sanitary inspector been created by ordinance of the city? The city of Chicago is, as averred in the information, incorporated under the general law entitled, "An act to provide for the incorporation of cities and villages." Hurd's Rev. Stats. 1905, p. 290. Section 1 of article 6 of that act is in these words: "There shall be elected, in all cities organized under this act, the following officers, viz.: a mayor, a city council, a city clerk, city attorney and a city treasurer." Section 2 of article 6 provides as follows: "The city council may in its discretion, from time to time, by ordinance passed *by a vote of two-thirds of all the aldermen elected,* provide for the election by the legal voters of the city, or the appointment by the mayor, with the approval of the city council, of a city collector, a city marshal, a city superintendent of streets, a corporation counsel, a city comptroller, or any or either of them, and such other officers as may by said council be deemed necessary." By section 2 the city is authorized to create other offices than those mentioned, "by a vote of two-thirds of all the aldermen elected." This mode of passing an ordinance pro-

viding for other officers than those mentioned, is exclusive of all other modes. In 1 Dillon on Mun. Corp., 4th ed., sec. 309, the author says: "Ordinances being among the most important and solemn acts of a corporation, it is essential to their validity that they shall be adopted by the proper body duly assembled, and in the manner prescribed by the charter," etc. See, also, 26 Am. & Eng. Ency., p. 1142, parag. 8, and cases cited in note 1.

It is not averred in the information that any such office as that of chief sanitary inspector has been created by an ordinance passed by a two-thirds vote of all the aldermen elected, or by any ordinance whatever. Nor is this claimed by counsel in their argument. They also rely, in connection with section 808, on the averments in the information that the health commissioner, by virtue of the authority conferred on him by section 808, to appoint "such other employes as might be necessary," appointed, from time to time, with the consent of the mayor, medical sanitary inspectors, and, from time to time, designated one of said medical sanitary inspectors chief sanitary inspector, who was thereafter called chief sanitary inspector, and was so designated in the records of the department of health, and of the city of Chicago, and the place or office held by such appointee was thereafter known as the place or office of chief sanitary inspector, and is so designated in said records, and the place or office so designated is and always has been the same as the place or office of a medical sanitary inspector appointed by the commissioner of health, with the consent of the mayor, and the civil service commission placed said chief sanitary inspector in the class of "official service." Section 808 does not create the office of chief sanitary inspector, as the court expressly decided in Hedrick v. The People, *supra,* nor does it purport to create any office. On the contrary it, in terms, recognizes the assistant commissioner of health, the secretary, etc., as mere employes, because next fol-

lowing the language authorizing their appointment are the words, "and such other employes as may be necessary." It certainly cannot be reasonably contended that the commissioner of health can create an office. That power can only be exercised by the legislature or by the city council, in the mode prescribed by section 2 of article 6 of the act under which the city is incorporated.

Neither did the naming of an employe, whose duties are averred to be those of a medical sanitary inspector or chief sanitary inspector, on the records of the department of health and of the city, constitute him an officer. Neither could the civil service commission, by classing the so-called chief sanitary inspector in the class known as "Official Service," make him an officer. Calling one by an apparently official name, or so writing his apparently official name in records, cannot constitute him an officer, nor his place an office.

In Hedrick v. The People, *supra,* the court say: "The office, if it has existence, was created by local law, *i. e.,* an ordinance of the city; and in such cases the legal existence of the office must be affirmatively and distinctly, not inferentially, alleged."

The amended information does not set forth or aver any ordinance of the city of Chicago creating the office of chief sanitary inspector. For this defect in the original information, the court held it insufficient, and that the demurrer to the plea should have been carried back and sustained to the information. Powell v. People, 121 Ill. App. 474, was a petition for *mandamus,* commanding the civil service commissioners to strike from the list of eligibles, for the position of chief sanitary inspector, the name of the present relator, on the theory that the position was an office, and that Ball had not resided in the city of Chicago one year next preceding his appointment, and was therefore ineligible, by section 6, article 5 of the charter. Hurd's Rev. Stat. 1905, p. 505. The trial court

granted the writ, but the Appellate Court reversed and remanded the judgment, saying, among other things: "Section 2 of article 6 of the Cities and Villages Act provides that the city council may, by a two-thirds vote, provide for the election or appointment of certain officers, and such other officers as may by said council be deemed necessary or expedient. The statute does not create the office of chief sanitary inspector. The petition contains no averment that the city council of Chicago has created such an office. The position must, therefore, be held to be a mere employment and not an 'office' within the meaning of that word as used in the Cities and Villages Act."

Counsel for the relator rely on Ptacek v. The People, 194 Ill. 125. In that case the question whether the position, which was the subject of the information, was or not an office, was not raised or argued in the trial court, in respect to which the court say: "In the Appellate Court counsel for the appellant attempted to raise the question that the position of assistant superintendent of police in the city of Chicago is not an office, and therefore *quo warranto* is not a proper remedy to test the title thereto. The point was not made in the Circuit Court, nor was there in that court any issue upon which it could have been made, and therefore, under the familiar rule that errors cannot be assigned for the first time in this or the Appellate Court, it cannot be availed of here."

In Hedrick v. The People, *supra,* the question whether the place of chief sanitary inspector is an office was raised, as in the present case, by the demurrer to the pleas being carried back to the information.

The judgment will be affirmed.

*Affirmed.*